UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER O'BRIEN, *as Administrator of Estate of Allison Marie Lakie*,

                     **Plaintiff,**

  vs.                                              5:22-cv-948
                                                     (MAD/TWD)

THE CITY OF SYRACUSE; BEN WALSH, *Syracuse Mayor*; KENTON BUCKNER, *Syracuse Police Department Chief*; SHARON OWENS, *Deputy Mayor*; DAVID HART, *Lt.*; MATTHEW LIADKA, *Sergeant*; KENNETH SHEEHAN, *Officer*; NICOLAS SARALEGUI-MARTIN, *Officer*; SARGENT, *Officer*; FRANCISCO, *Officer*; MAKENZIE GLYNN, *Officer*; and JOHN/JANE DOES 1-10, *Police Officers*,

                     **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **OFFICE OF RICHARD CARDINALE**<br>26 Court Street – Suite 1507<br>Brooklyn, New York 11242<br>Attorneys for Plaintiff | **RICHARD CARDINALE, ESQ.** |
| **MICHAEL HUESTON, ATTORNEY AT LAW**<br>16 Court Street, 35th Floor<br>Brooklyn, New York 11241<br>Attorneys for Plaintiff | **MICHAEL HUESTON, ESQ.** |
| **HANCOCK ESTABROOK, LLP**<br>1800 AXA Tower I<br>100 Madison Street<br>Syracuse, New York 13202<br>Attorneys for Defendants | **JOHN G. POWERS, ESQ.**<br>**MARY L. D'AGOSTINO, ESQ.**<br>**RYAN M. POPLAWSKI, ESQ.** |
| **SYRACUSE CORPORATION COUNSEL**<br>City Hall Room 300<br>233 East Washington Street<br>Syracuse, New York 13202<br>Attorneys for Defendants | **DANIELLE PIRES, ESQ.** |

| | |
|---|---|
| **SYRACUSE LAW DEPARTMENT** | **TODD M. LONG, ESQ.** |

City Hall Room 300
233 East Washington Street
Syracuse, New York 13202
Attorney for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff, as administrator of the estate of Allison Marie Lakie, commenced this action on September 12, 2022, pursuant to Title II of the Americans with Disabilities Act of 1990, Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and New York state law, concerning an allegedly unlawful fatal police shooting, on October 20, 2021, of Allison Marie Lakie, a 35 year-old mentally disabled woman, in the City of Syracuse, New York. *See* Dkt. No. 1.  The named defendants in this action are Lieutenant David Hart, Sergeant Matthew Liadka, Officer Kenneth Sheehan, Officer Nicolas Saralegui-Martin, Officer Christopher Sargent, Officer Evan Francisco, and Officer Makenzie Glynn (hereinafter, the "Police Officer Defendants"), Mayor Ben Walsh, Syracuse Police Department Chief Kenton Buckner, and Deputy Mayor Sharon Owens (hereinafter, the "Supervisory Defendants"), and the City of Syracuse (hereinafter, the "City").

In a September 18, 2023, Memorandum-Decision and Order, the Court granted in part and denied in part Defendants' motions to dismiss. *See* Dkt. No. 48.  Specifically, as a result of the Court's Memorandum-Decision and Order, the following claims were dismissed: (1) Plaintiff's claims under the ADA and Rehabilitation Act brought against the Police Officer Defendants and the Supervisory Defendants; (2) Plaintiff's Human Rights Law and Civil Rights Law § 28 against all Defendants; (3) Plaintiff's Section 1983 claims against the Supervisory Defendants; (4)

Plaintiff's *Monell* claim against the City; (5) Plaintiff's deliberate indifference claim against the Police Officer Defendants insofar as the complaint alleges that the officers should have provided Ms. Lakie with treatment instead of using force against her; and (6) the negligence claim against all Defendants. *See id.* at 58 n.13. Conversely, Plaintiff's surviving claims include the following: (1) the ADA and Rehabilitation Act claims against the City; (2) the excessive force claim against the Police Officer Defendants; (3) the deliberate indifference claim against the Police Officer Defendants insofar as the complaint alleges that the officers delayed in providing her treatment by continuing to fire at her instead of providing immediate medical care; (4) the failure to intervene claim against the Police Officer Defendants; (5) the state law assault and battery claims against all Defendants; and (6) the wrongful death and conscious pain and suffering claim against all Defendants. *See id.*

Following the Court's Memorandum-Decision and Order, both sides moved for reconsideration. *See* Dkt. Nos. 50, 52. In his motion, Plaintiff seeks reinstatement of his *Monell* and the Section 1983 claim against the City of Syracuse and the Section 1983 claims against Mayor Walsh, Deputy Mayor Owens, and Chief Buckner. *See* Dkt. No. 50. In Defendants' motion, they seek partial reconsideration of the decision insofar as the Court (1) declined to consider the redacted body-worn camera ("BWC") footage relied upon by Plaintiff in drafting the Complaint (and upon reconsideration, Defendants ask the Court to revisit several determinations that are impacted by such consideration of the BWC footage); (2) did not address the Supervisory Defendants' narrow state-law argument regarding vicarious liability; and (3) "erroneously held that the Complaint plausibly alleged theories of disparate impact and treatment when the Complaint failed to advance either theory and does not otherwise allege any prior specific instance of disparate treatment or impact." Dkt. No. 52-8 at 2.

As set forth below, Plaintiff's motion for reconsideration is denied as moot and Defendants' motion for reconsideration is denied on the merits. Additionally, Plaintiff's motion to amend the complaint is granted.

## II. BACKGROUND

The Court assumes the parties' familiarity with the background of this case and otherwise adopts its previous rendition of the facts contained in the September 18, 2023, Memorandum-Decision and Order. *See* Dkt. No. 48.

## III. DISCUSSION

**A.     Standard of Review**

Motions for reconsideration proceed in the Northern District of New York under Local Rule 60.1 (formerly Rule 7.1(g)).[1] "In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements." *In re C-TC 9th Ave. P'ship v. Norton Co.*, 182 B.R. 1, 2 (N.D.N.Y. 1995). Such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). The prevailing rule "recognizes only three possible

---

[1] Local Rule 60.1 provides in relevant part as follows:

> Unless otherwise provided by the Court, by statute or rule ..., a party may file and serve a motion for reconsideration or reargument no later than FOURTEEN DAYS after the entry of the challenged judgment, order, or decree. All motions for reconsideration shall conform with the requirements set forth in L.R. 7.1(a)(1) and (2). The briefing schedule and return date applicable to motions for reconsideration shall conform to L.R. 7.1(a) .... The Court will decide motions for reconsideration or re-argument on submission of the papers, without oral argument, unless the Court directs otherwise.

grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R. at 3 (citations omitted). "[A] motion to reconsider should not be granted where the moving party seeks solely to re[-]litigate an issue already decided." *Shrader*, 70 F.3d at 257; *see also Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).

B.     **Plaintiff's Motion to Amend and Motion for Reconsideration**

The Court first considers Plaintiff's motion to amend, inasmuch as granting that motion would render Plaintiff's motion for reconsideration moot. "Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman v. Covidien Sales, LLC*, No. 13 Civ. 6486, 2014 WL 7404071, *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)). Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).

That said, "it remains 'proper to deny leave to replead where ... amendment would be futile.'" *Gorman*, 2014 WL 7404071, at *2 (quoting *Hunt v. All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)). When assessing futility, the court employs a standard comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6). *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (observing that "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss"). Ultimately, whether to grant leave to amend is addressed to the court's discretion. *See Krupski v.*

*Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010) ("Rule 15(a) gives discretion to the district court in deciding whether to grant a motion to amend a pleading to add a party or a claim").

Recently, the Second Circuit reaffirmed its strong preference for providing plaintiffs with an opportunity to amend deficiencies, particularly when a plaintiff has not had the benefit of a district court's ruling on the issues relevant to amendment:

> "Federal Rule of Civil Procedure 15(a)(2) states that court[s] should freely give leave [to amend] when justice so requires.  We have upheld Rule 15(a)(2)'s liberal standard as consistent with our strong preference for resolving disputes on the merits.  We have been particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue, reasoning that [w]ithout the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.  However, denial of leave to amend is proper if amendment would be futile.  In particular, [a] plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."

*APP Grp. Inc. v. Rudsak USA Inc.*, No. 22-1965, 2024 WL 89120, *4-5 (2d Cir. Jan. 9, 2024) (quoting *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019)); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (finding it improper to provide plaintiffs with "a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead").

With this standard in mind, and having carefully reviewed the record in this case, including the parties' submissions, the Court finds that Plaintiff must be granted leave to amend. In the proposed amended complaint, Plaintiff provides additional factual support obtained during discovery for the claims that are the subject of Plaintiff's motion for reconsideration.  Specifically, Plaintiff has added additional factual support for his *Monell* claim against the City of Syracuse,

the Section 1983 claims against Mayor Walsh, Deputy Mayor Owens, and Police Chief Buckner. *See* Dkt. No. 110-2.

Moreover, once discovery commenced in this matter upon the Court's resolution of the pending motions to dismiss, Plaintiff learned of the identities of the new defendants identified in the amended complaint and the bases for bringing claims against them. Defendants and the previous unidentified individuals will not be prejudiced from the joinder of these new defendants and Plaintiff did not unreasonably delay in seeking to add these parties, particularly in light of the stay on discovery while the motions to dismiss were pending. *See Aigeltinger v. Target Corp.*, 642 F. Supp. 3d 274, 280 (N.D.N.Y. 2022); *see also Friedl v. City of New York*, 210 F.3d 79, 87-88 (2d Cir. 2000) (holding that amendment was appropriate "based on information acquired during depositions and other discovery").

Upon review, the Court finds that the filing of an amended complaint, as proposed, would not be futile. The Court agrees that additional factual allegations regarding Plaintiff's claims provide necessary clarity regarding the bases for those claims and the claims against the newly identified defendants are not clearly futile. Therefore, while the Court takes not position whether such amendments would be sufficient to survive a Rule 12(b)(6) motion, they are clearly not futile and Plaintiff should be provided an opportunity to correct these deficiencies.[2] *See Cresci v. Mohawk Cmty. Coll.*, 693 Fed. Appx. 21, 25 (2d Cir. 2017) (holding that district court erred in denying leave to amend when it "granted the defendant's motion to dismiss, identif[ied] the flaws it found in [the plaintiff's] complaint, and denied [the plaintiff] leave to replead, faulting him for

---

[2] The Court understands that Defendants have not had a complete opportunity to respond in opposition to Plaintiff's motion to amend, since they requested that the Court stay briefing on the motion to amend until the Court issued a decision on the pending motions for reconsideration. Defendants will be free to raise any arguments regarding the substance of the claims in the amended complaint in a properly filed motion to dismiss or for judgment on the pleadings.

having failed to submit a proposed amended complaint in the time between the defendant's motion to dismiss and the court's ruling on it").

Accordingly, Plaintiff's motion to amend (Dkt. No. 110) is granted and Plaintiff's motion for reconsideration (Dkt. No. 50) is denied as moot.[3]

**C.    Defendants' Motion for Reconsideration**

As noted above, in Defendants' motion, they seek partial reconsideration of the decision insofar as the Court (1) declined to consider the redacted body-worn camera ("BWC") footage relied upon by Plaintiff in drafting the Complaint (and upon reconsideration, Defendants ask the Court to revisit several determinations that are impacted by such consideration of the BWC footage); (2) did not address the Supervisory Defendants' narrow state-law argument regarding vicarious liability; and (3) "erroneously held that the Complaint plausibly alleged theories of disparate impact and treatment when the Complaint failed to advance either theory and does not otherwise allege any prior specific instance of disparate treatment or impact." Dkt. No. 52-8 at 2. The Court will address each of these arguments in turn.

*1. Consideration of BWC Footage*

In support of their motion for reconsideration, Defendants argue that the Court made an "incorrect statement regarding the provenance of the video exhibits." Dkt. No. 52-8 at 6. Defendants contend that the Memorandum-Decision and Order incorrectly distinguished between the "redacted videos" which Plaintiff's counsel testified to having viewed on the New York

---

[3] To the extent that Plaintiff's motion for reconsideration "request[s] that the Court rescind certain statements in the memorandum-decision and order that are unfair to counsel," Dkt. No. 50-1 at 11, that request is denied.  The Court has reviewed the identified statements in Plaintiff's motion and finds that Plaintiff has failed to show that the offending statements form a basis for reconsideration under any of the three possible grounds recognized for such motions. *See Gaston v. Coughlin*, 102 F. Supp. 2d 81, 83 (N.D.N.Y. 2000).

Attorney General's website prior to filing the Complaint, and the "unredacted videos attached as exhibits to Defendants' motions." Dkt. No. 48 at 12; *see also* Dkt. No. 22-10 at 18.  Defendants argue that the Court improperly relied on the fact that Plaintiff's counsel had seen the three redacted, but not the un-redacted, videos, as a basis for declining to consider the video exhibits as part of Defendants' motion to dismiss.  *See* Dkt. No. 52-8 at 3-6.

The Memorandum-Decision and Order stated that "Plaintiff contends that when the complaint was drafted, counsel had only viewed three redacted videos on the New York Attorney General's website, rather than the entire, unredacted videos attached as exhibits to Defendants' motions." Dkt. No. 48 at 12 (citing Dkt. No. 36 at 21).  However, in Plaintiff's opposition to Defendants' motion to dismiss, Plaintiff only submitted that he had "viewed three redacted videos on the New York Attorney Generals website," and did not claim that those videos were different from the three videos Defendants submitted as exhibits to their motion to dismiss.  Dkt. No. 36 at 21.  Defendants' authenticating declaration submitted with their original motion to dismiss did identify each of the three videos as: "a true and accurate copy of the redacted body-worn camera footage recorded by Sgt. Matthew Liadka, which was published on the website of the New York State Attorney General's Office," "a true and accurate copy of the redacted body-worn camera footage recorded by Ofc. Christopher Sargent, which was published on the OAG's website.  The published footage is 2:00:04 in length. . .. presently accessible on the OAG's website," and " a true and accurate copy of the redacted body-worn camera footage recorded by Ofc. Nicolas Saralegui-Martin, which was published on the OAG's website.  The footage published by the OAG is 18:59 in length." Dkt. No. 21-1 at ¶¶ 4-6.  Defendants declared that the videos they submitted were the same, and in fact copies of, the videos on the Office of Attorney General's

website – the same videos which Plaintiff testified to having viewed – and Plaintiff did not object to Defendants' claim that they were the same videos. *See id.*

The Court agrees with Defendants insofar as the Memorandum-Decision and Order mischaracterized whether Plaintiff's counsel had seen the videos Defendants submitted. However, because Plaintiff's opportunity to view the videos before submitting the Complaint was only one factor in the Court's decision to decline to consider the videos, it was not a material misstatement of facts or misapprehension of the record and therefore would not reasonably be expected to alter the conclusion reached by the Court. *See Shrader*, 70 F.3d at 257. In the Memorandum-Decision and Order, the Court noted that the "body camera footage is not attached to, referenced in, or mentioned in the complaint." Dkt. No. 48 at 12 (citing *Feliz v. City of New York*, No. 19-CV-6305, 2022 WL 446043, *3 (S.D.N.Y. Feb. 14, 2022); *Benny v. City of Long Beach*, No. 20-CV-1908, 2021 WL 4340789, *8-10 (E.D.N.Y. Sept. 23, 2021) (declining to consider surveillance footage in police-misconduct case even where the complaint mentioned that the footage existed)). The Court noted that the Complaint did not mention the video footage and that Plaintiff's counsel contended that, although he had "viewed the three redacted videos on the New York Attorney General's website," he "relied on an array of evidence in drafting the pleading." Dkt. No. 36 at 21. The Court cited cases where courts declined to consider video evidence submitted by a defendant on a motion to dismiss where the video evidence was not integral to the complaint because it was not mentioned in the complaint. *See* Dkt. No. 48 at 13-14.

Defendants argue that many factual allegations in the Complaint can be supported by the video evidence. *See* Dkt. No. 52-8 at 3-6. Even though the Complaint contains quotes which the videos would also support, as previously discussed in the Memorandum-Decision and Order, that

10

is not proof that Plaintiff relied on the videos and Plaintiff could conceivably have had other means proving the allegations, such as witness testimony from overhearing shouted statements, or smart home recording devices. *See* Dkt. No. 48 at 13-14 (citing *Smith v. City of Greensboro*, No. 1:19-CV-386, 2020 WL 1452114, *3 (M.D.N.C. Mar. 25, 2020) ("The factual allegations contained therein stand independent of the video and may conceivably be proven without it (for instance, via witness testimony). Nor is there any indication from Plaintiffs that they actively relied upon the video in crafting the complaint"); *Ashley v. Gonzalez*, No. 19-CV-6282, 2020 WL 7027501, *2 (S.D.N.Y. Nov. 30, 2020) ("Furthermore, there is no basis to conclude that these videos are integral or essential to the Complaint. Courts in this district have expressed skepticism at such claims, emphasizing that extraneous videos documenting the events in question are not properly considered on a motion to dismiss unless the plaintiff relied upon the videos when drafting the complaint")). For these reasons, and those stated in the Memorandum-Decision and Order, the Court finds that its prior conclusion that "it is no more proper to consider the videos on this motion than any other type of evidence a defendant might unilaterally proffer from outside the pleadings," is not altered by the characterization of the videos Plaintiff's counsel viewed. Dkt. No. 48 at 14-15.

The Court also notes that, insofar as Defendants contend that specific quotes from the complaint refer to statements made in the videos, *see* Dkt. No. 52-8 at 8-9, Defendants merely repeat their earlier arguments and seek to relitigate the issue which this Court already decided. *See* Dkt. No. 21-10 at 18-19; *see also Shrader*, 70 F.3d at 257 (holding that a motion to reconsider "should not be granted where the moving party seeks solely to relitigate an issue already decided").

Finally, the Court finds that consideration of the videos in the present matter, at this stage in the litigation, when Plaintiff has not yet been afforded full discovery, would be fundamentally unfair. While the BWC videos in this case will undoubtedly play a pivotal role in deciding any future motions for summary judgment or in trial, such videos will only represent a small portion of the relevant evidence that Plaintiff obtains through discovery. While consideration of such videos may be appropriate in certain cases, the one presently before the Court is not one of those cases.

Accordingly, the Court denies this aspect of Defendants' motion for reconsideration.[4]

### 2. Vicarious Liability

Defendants argue that "in support of their motion to dismiss, the Supervisory Defendants argued that New York law does not recognize vicarious liability against supervisory employees, which required dismissal of those state law claims against them." Dkt. No. 52-8 at 13 (citing Dkt. No. 23-9 at 24-25). Defendants claim that Plaintiff did not dispute that point, which is tantamount to conceding the argument, and that the Court committed clear error when it did not specifically address the issue. *See id.*; *see also* Dkt. No. 68 at 4-5. Specifically, Defendants argue that "all state law claims asserted against Supervisory Defendants under a theory of respondeat superior must be dismissed; *i.e.*, claims six, seven, eight, and nine." *Id.*

---

[4] In their motion for reconsideration, Defendants request that, should the Court reconsider its ruling regarding consideration of the BWC footage, it should "reconsider determinations flowing from its decision not to consider the BWC footage." Dkt. No. 52-8 at 12-13. Since the Court has declined to reconsider its ruling on the BWC footage, this aspect of Defendants' motion for reconsideration is denied. Moreover, as set forth below, the Court finds that the remainder of Defendants' motion for reconsideration is moot. The Court only addressed the merits of this aspect of Defendants' motion for reconsideration because it is an issue that could arise again should Defendants move to dismiss the Amended Complaint.

As an initial matter, the Court dismissed claims six and nine – Plaintiff's claims under the New York Human Rights Law and negligence claims – against all Defendants and these claims were not repled in the amended complaint. *See* Dkt. No. 48 at 54, 56, 58 n.13. Moreover, Plaintiff's assault and battery claims in the amended complaint are only brought "Against the City of Syracuse and the Police Officer Defendants," whereas in the original Complaint the claims were brought "Against all Defendants." Dkt. No. 110-2 at 39. Since the Amended Complaint is now the operative pleading and because the Supervisory Defendants were not renamed in the assault and battery claims, the Court denies this aspect of Defendants' motion for reconsideration as moot.

### 3. Disparate Impact and Treatment

Defendants' motion for reconsideration states that the Court "erroneously held that the Complaint plausibly alleged theories of disparate impact and treatment when the Complaint failed to advance either theory and does not otherwise allege any prior specific instance of disparate treatment or impact." Dkt. No. 52-8 at 2. Defendants specifically argue that the Court improperly relied on a statement Plaintiff made in response to the motion to dismiss, which was not included in the Complaint. *See id.* at 15.

In his Amended Complaint, which the Court has accepted for filing, Plaintiff provides significant additional factual assertions in support of these claims brought under the ADA and RA. As such, regardless of any error allegedly made, this aspect of Defendants' motion is denied as moot.[5]

---

[5] The Court notes that, in denying Defendants' motion to dismiss as to the ADA and RA claims, the Court noted that "[b]ecause Defendants' motion relies exclusively on the body-worn camera footage, they have not addressed whether the complaint, on its face, sufficiently alleges a claim under either of the three theories of liability for ADA and Rehabilitation Act claims." Dkt.

(continued...)

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion to amend the Complaint (Dkt. No. 110) is **GRANTED**; and the Court further

**ORDERS** that the parties' motions for reconsideration (Dkt. Nos. 50 & 52) are **DENIED**; and the Court further

**ORDERS** that Defendants' letter motion requesting that the Court strike Plaintiff's improper supplemental briefing (Dkt. No. 92) is **DENIED** as moot; and the Court further

**ORDERS** that Plaintiff shall file a clean version of his Amended Complaint within five days of the date of this Memorandum-Decision and Order, which shall be the operative pleading in this matter; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 20, 2024
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[5](...continued)
No. 48 at 25-26 n.3.  Further, the Court noted that Defendants argued for the first time that Plaintiff failed to plausibly allege deliberate indifference.  *See id.*  The Court properly declined to consider the argument since it was raised for the first time in their reply.  *See id.* (citations omitted).